## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

RANDALL ROBERTSON,    )
    )
      Plaintiff,    )
   v.    )    **Case No. CIV-14-423-RAW-SPS**
    )
CAROLYN W. COLVIN,    )
**Acting Commissioner of the Social**  )
**Security Administration,**    )
    )
     Defendant.    )

## REPORT AND RECOMMENDATION

The claimant Randall Robertson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 26, 1952, and was sixty-two years old at the time of the most recent administrative hearing (Tr. 129, 418). He completed the tenth grade, and has worked as an acoustical carpenter, construction worker I, laborer-meat products, general laborer, injection molding tender, and mason helper (Tr. 177, 410). The claimant alleges he has been unable to work since an amended alleged onset date of June 16, 2009, due to eye stroke, back problems, hepatitis C, and his right ankle (Tr. 170, 398).

## Procedural History

On July 24, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 on July 8, 2009. His applications were denied. ALJ Osly F. Deramus held an administrative hearing and determined the claimant was not disabled in a written decision dated March 22, 2011 (Tr. 12-22). The Appeals Council denied review, but this Court reversed the decision of the Commissioner on appeal in Case No. CIV-12-283-RAW-SPS, and remanded the case for further proceedings to properly assess the claimant's RFC in light of all of his impairments, both severe and nonsevere (Tr. 479-489). On remand, ALJ Doug Gabbard, II, held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated July 8, 2014

(Tr. 396-411). The Appeals Council again denied review, so ALJ Gabbard's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: avoidance of even moderate exposure to dust, fumes, gases, and other pulmonary irritants, as well as avoidance of exposure to loud noises (Tr. 404). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, laundry worker and dining room attendant (Tr. 411).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly assess his credibility; (ii) failing to properly assess his RFC, including the evaluation of a treating physician opinion; and (iii) by failing to fully develop the record. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of chronic obstructive pulmonary disease (COPD) and bilateral sensorineural hearing loss, as well as the nonsevere impairments of hypertension, hepatitis C, visual deficit left eye, dental problems, tobacco abuse, history of compression fracture of the thoracic spine, bilateral osteoarthritis of the ankles, rectal bleeding, depressive disorder, and substance abuse

disorders (Tr. 399). The relevant evidence in the record reveals the following. The claimant was working as a masonry laborer, but reported in January 2009 to a physician that he had not been working as regularly because of the recession (Tr. 269). The claimant was assessed with COPD and prescribed inhalers for treatment, and was found to be a good candidate for hearing aids bilaterally (Tr. 334, 632).

A March 19, 2009 scan of the ankle revealed findings mostly compatible with posttraumatic remodeling and posttraumatic degenerative change (Tr. 272). That day, Dr. Kerri Napier prepared a certification for return to work, stating that the claimant could return to work on March 20, 2009 (Tr. 280). On March 23, 2009, Dr. Howard Wilcox, a physician at the Kansas Orthopedics & Sports Medicine clinic diagnosed the claimant with traumatic arthrosis with degenerative changes of the right ankle, and prescribed a lateral heel wedge to use in the claimant's shoe (Tr. 294-296). The following month the claimant reported to Dr. Wilcox he had been working thirty hours per week while wearing a high-top boot, and Dr. Wilcox noted the claimant would possibly need a fusion or osteotomy in the future (Tr. 300). There is little in the record regarding the claimant's ankle after this time, except for an April 21, 2010 note of degenerative joint disease of the right ankle, and a report of ankle pain on May 25, 2010 where he stated that he had ankle pain for two years that gets worse when he is on it (Tr. 348, 373).

On May 9, 2014, Dr. Danny Silver completed a Medical Source Statement of the claimant's physical ability to perform work-related activities. He indicated, *inter alia*, that the claimant could sit twenty minutes at one time and for one hour total during an

eight-hour workday; that he could stand ten minutes at one time up to twenty minutes in an eight-hour workday; that he could walk five minutes total in an eight-hour workday; could never lift/carry above twenty pounds, could never squat, crawl, climb, crouch, or kneel; could occasionally bend and stoop; could frequently reach above the head; and could frequently tolerate exposure to noise but never tolerate exposure to dust, fumes and gases (Tr. 645-646). He further indicated the claimant was in severe pain and would likely be absent from work more than four days per month, would need to periodically elevate his feet, and would need a sit/stand option at will (Tr. 647). Dr. Silver's range of motion findings reflect that all were within normal limits except forward flexion of the left hip and both dorsiflexion and plantar flexion of the right ankle (Tr. 648). He noted that the claimant's gait and coordination were limited due to right ankle pain, and that the claimant had an antalgic gait (Tr. 649). He further indicated that the claimant could not stand and walk without an assistive device for his right ankle and that he could not heel-toe walk on the right (Tr. 649).

At the most recent administrative hearing, the claimant testified that he stopped working due to an old ankle injury, that his doctors told him he could only work at a desk job, and that his ankle could not be fixed by surgery (Tr. 433-434, 440). He believed that his ankle and his COPD were the main reasons keeping him from working (Tr. 434). He stated that he mostly spends the day in a recliner, that he could stand up to fifteen minutes before he has to sit down, and that he sits most of the day (Tr. 436-437). He testified that he saw Dr. Silver for about an hour for a good physical, and that he planned to go back to him as a patient (Tr. 443).

In his written opinion, the ALJ summarized the claimant's testimony as well the medical evidence in the record and testimony from the claimant's sister. At step four, the ALJ determined that the claimant was not credible, noting the claimant's treatment records and the opinion evidence. As to the opinion evidence, the ALJ gave great weight to Dr. Napier's finding that the claimant could return to work with no restrictions on March 20, 2009 (Tr. 407). He gave Dr. Wilcox's[2] opinion diminished weight because the claimant was actually working at that time and reported lifting between forty and one hundred pounds and walking eight hours a day as a mason helper (Tr. 407). He then afforded Dr. Silver's opinion diminished weight, and gave great weight to the state reviewing physicians who found the claimant had no severe physical impairment, except he determined the claimant's COPD and hearing loss were severe impairments based on evidence submitted at the hearing level and the claimant's subjective reports (Tr. 408).

The claimant first contends that the ALJ erred in analyzing his credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An

---

[2] The record the ALJ referred to indicates that the claimant was treated by Dr. Wilcox, but that an "A. Newberry" signed a "Provisional Consultation Report" for Dr. Wilcox (Tr. 295). This was apparently a document prepared to be sent to the claimant's employer, restricting him to desk work. The pages before and after this indicate records and a prescription for a lateral wedge, both signed by Dr. Wilcox. The ALJ's opinion nevertheless refers to this as "A. Newberry's" opinion. Such an error in identification is harmless where, as here, the ALJ's reasoning is supported by the record and his misstatement is unchallenged by the claimant.

ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 46). Use of boilerplate language is generally disfavored, but this was not the sum total of the ALJ's analysis of the claimants' credibility. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) ("Such conclusory analysis, which neither reveals what "other reasons" or "other factors" prompted the ALJ's conclusions, nor is tethered to specific evidence, constitutes the type of disfavored boilerplate this court rejected in *Hardman* [*v. Barnhart*, 362 F.3d 676, 678-679 (10th Cir. 2004).] But use of such boilerplate is problematic only when it appears '*in the absence of a more thorough analysis*.'") (emphasis added), *quoting Hardman*, 362 F.3d at 679. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) the claimant had been noncompliant with COPD medications and his statements regarding inability to afford these medications were suspect in light of his ability to support a tobacco habit; (ii) he stated he quit working due in part to back pain, but never reported back pain to his physicians; (iii) he previously worked at SGA despite left eye blindness; (iv) he performed previous job requirements (standing/walking eight hours per day, occasionally lifting 100 pounds or more, and frequently lifting forty

pounds) and the record did not support worsening symptoms rendering him unable to work; and (v) he alleged an amended disability onset date of June 16, 2009, but told a treating physician in January 2009 that he was not working due to the recession (Tr. 405-406). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*.

The claimant nevertheless seems to argue that the ALJ's statements regarding the claimant's ability to afford cigarettes is not "closely and affirmatively linked to substantial evidence" and further improperly disregarded his subjective complaints of pain because he improperly relied on minimal daily activities. The undersigned Magistrate Judge disagrees. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) *and Gossett v. Bowen*, 862 F.2d 802, 807-808 (10th Cir. 1988). But here there is no indication that the ALJ misread the claimant's medical evidence taken as a whole and the Plaintiff has not pointed to any specific evidence in the record in support of his arguments. Accordingly, the ALJ's determination of the claimant's credibility, including a pain assessment, is entitled to deference. *See Casias*, 933 F.2d at 801.

Second, the claimant asserts that the ALJ erred in his RFC assessment, specifically that it is not supported by the evidence in the record and that he failed to properly evaluate Dr. Silver's opinion as a treating physician. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. Without pointing

to any evidence in the record or explaining his argument, the claimant asserts that the record supports a more restrictive RFC than that determined by the ALJ, then recites the law requiring the ALJ to consider all the claimant's impairments singly and in combination and that the ALJ must link his findings to specific evidence. It is true that the ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). But here, the ALJ's treatment of the medical evidence in this case meets these standards. The undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that he could perform work at all exertional levels with further limitations.

An ALJ is required to assign controlling weight to the medical opinions of treating physicians only if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And even if medical opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed

using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 *and* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (July 2, 1996).  The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *See Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5.  Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight.  "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ's treatment of Dr. Silver's opinion meets these standards.  Because this was the claimant's first visit with Dr. Silver (and the only visit in the record) the ALJ

afforded Dr. Silver's opinion "diminished weight" because: (i) it was not supported by or consistent with the medical evidence in the record; (ii) Dr. Silver pointed to no medical evidence to support the limitations described; (iii) Dr. Silver stated he could sit for twenty minutes at a time up to one hour total in an eight-hour workday, but the claimant sat through the forty-five minute administrative hearing with no signs of distress; (iv) the claimant has tinnitus and hearing loss, but Dr. Silver found he could frequently tolerate exposure to noise; (v) Dr. Silver's examination and report were done based on a referral from his representative rather than as a treating physician; (vi) although being paid for such a report is legitimate, the context of the report being prepared for the claimant's disability claim could not be ignored; and (vii) the claimant's treating physician repeatedly noted normal gait and station (Tr. 408). The ALJ's opinion was thus sufficiently clear for the Court to determine the weight he gave to Dr. Silver's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2). The claimant nevertheless argues that the ALJ failed to give his opinion controlling weight as a treating physician, and erred by discussing each of the requisite factors. The Court properly noted the exact treatment relationship of the claimant with Dr. Silver, and, even if he were a treating physician, the ALJ is not required to discuss each factor. *See Oldham*, 509 F.3d at 1258 (2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. . .

. The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required[.]") [internal citations omitted]. *See also Andersen v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original] [internal citation omitted]. When all the evidence is taken into account, the conclusion that the claimant could perform the RFC assigned by the ALJ is supported by substantial evidence.

Finally, the claimant contends that the ALJ failed to develop the record because he "clearly had physical impairments that were not treated or sufficiently addressed." *See* Docket No. 18, p. 19. He nevertheless fails to point the Court to what these impairments were or how they affected the claimant so as to result in "severely limiting exertional and non-exertional impairments." It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that []he is disabled under the regulations." *Henrie*, 13 F.3d at 361 [citations omitted]. Here, the claimant has not met this burden.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do.  *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

### Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct.  The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**